UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CAROLYN M. YANCEY                                                              PLAINTIFF

V.                              NO. 4:20-CV-00478-JTR

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

<u>ORDER</u>

I.  **Introduction:**

Plaintiff, Carolyn M. Yancey ("Yancey"), applied for disability income benefits on November 3, 2016. (Tr. at 10). She filed an application for supplemental security income benefits on December 6, 2018. *Id*. In both applications, Yancey alleged that her disability began on March 28, 2012.[1] *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on March 21, 2019.[2] (Tr. at 20). The Appeals Council denied her request for review (Tr. at 1), making the ALJ's denial of Yancey's application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[3] reverses the ALJ's decision and

---

[1] At the hearing, Yancey amended her alleged onset date to September 16, 2016. (Tr. at 10).

[2] A prior ALJ found, in 2016, that Yancey was not disabled. (Tr. at 18).

[3] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

remands for further review.

## II. The Commissioner's Decision:

The ALJ found that Yancey had not engaged in substantial gainful activity since the amended alleged onset date of September 16, 2016. (Tr. at 13). At Step Two of the five-step analysis, the ALJ found that Yancey had the following severe impairments: glaucoma, asthma, seizure disorder, diabetes, anxiety, and depression. *Id*.

After finding that Yancey's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Yancey had the ability to perform work at all exertional levels, but that she had several non-exertional limitations: (1) she must avoid concentrated exposure to temperature extremes, dust, fumes, humidity, chemicals, and other pulmonary irritants; (2) she must avoid working around hazards such as unprotected heights or dangerous moving mechanical parts, as well as no driving; (3) she could perform work where the interpersonal contact is only incidental to the work performed; (4) she could perform simple tasks that could be learned within a 30-day period that require little independent judgment to perform those tasks; and (5) she could tolerate occasional changes in a routine work setting. (Tr. at 15).

The ALJ determined that Yancey was unable to perform any of her past

2

relevant work. (Tr. at 19). Relying upon Vocational Expert ("VE") testimony, the ALJ found that, based on Yancey's age, education, work experience and residual functional capacity ("RFC"), jobs existed in significant numbers in the national economy that she could perform, including positions as dishwasher and store laborer. (Tr. at 20). Thus, the ALJ concluded that Yancey was not disabled. *Id.*

### III.  Discussion:

    A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in

3

Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.   Yancey's Arguments on Appeal

Yancey contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ erred in ignoring relevant portions of the Disability Determination Services ("DDS") medical expert opinions regarding manipulative limitations, which resulted in an inaccurate RFC and an incomplete Step Two determination.[4] Yancey also contends that the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") at Step Five. The Court finds support for Yancey's arguments.

---

[4] DDS medical experts are highly qualified physicians, employed by the Administration, to review the medical evidence before a hearing takes place.

Yancey, who is right-hand dominant, had her right thumb amputated in 1997; she testified that ever since, she has had difficulty gripping and handling small objects.[5] (Tr. at 16, 75-76, 219-234, 544-547). At a March 4, 2017 consultative medical examination, she told Dr. Kwan Park, M.D., that her hand surgeon rated her 53.5% disabled due to the amputation. (Tr. at 488-492). While a right-hand x-ray showed a well-healed amputation, and while Dr. Park noted a normal right-hand examination, the two DDS medical experts found that Yancey had limitations based on the right thumb amputation. (Tr. at 83, 488-493).

The DDS medical experts both assigned a medium RFC with a limitation to only occasional fingering with the right extremity.[6] (Tr. at 81-102). In addition, the vocational specialist, who reviewed the medical and vocational records at the initial administrative level, wrote in her March 22, 2017 report, that Yancey would be limited to sedentary-to-light work that didn't require bilateral hand usage. (Tr. at 85-86). Records from November 2018 (from a medical doctor and an orthotics

---

[5] While Yancey alleged other impairments, the Court limits its discussion to the medical evidence relevant to this determination. *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020)("Although our detailed discussion is targeted, we have considered her arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

[6] The two DDS medical opinions issued on March 22, 2017 and June 23, 2017 respectively, after Dr. Park's March 4, 2017 evaluation and report. (Tr. at 81-83, 99-102). Also, Dr. Park's summary did not include an opinion on whether Yancey had any right-hand manipulative limitations. (Tr. at 488-492).

specialist) reveal that Yancey needed a new thumb prosthesis, and that she could not grasp things. (Tr. at 544-548). The evidence suggests that Yancey had problems using her right hand, but those problems were discounted by the ALJ, without sufficient explanation.[7]

The ALJ did not find any right-thumb or right-hand impairment to be severe at Step Two (he did not even mention the right hand at Step Two), he did not include fingering or handling limitations in the hypothetical he posed to the VE at the hearing, and he did not include those well-supported limitations in the RFC. (Tr. at 13-15, 49-50). When Yancey's attorney asked the VE a hypothetical that included a limitation to occasional fingering and handling, the VE said that would preclude "most all of medium work." (Tr. at 51).

The ALJ said he gave significant weight to the DDS medical opinions (Tr. at 18), but he apparently chose to ignore their clear indication that Yancey could only occasionally finger with her right hand. The ALJ did not explain why he ignored that portion of the two medical opinions, and he did not discuss the conflict between

---

[7] It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). *See Walker v Comm'r.*, 911 F.3d 550, 553 (8th Cir. 2018)(The Court held, consistent with prior case law, that an ALJ must give good reasons for discounting medical opinions).

fine

those opinions and the opinion of Dr. Park.[8]  He did not "show his work." *Quoting Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 *11-12 (W.D. Mo. Jan. 14, 2019). There is apparent error at several steps of the Five Step analysis.[9]

The Court notes that unresolved conflicts between the VE's testimony and the DOT may exist, but declines to make a specific determination on that point of appeal.

## IV.  Conclusion:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not give good reasons for how he assessed the medical opinions and he did not give proper

---

[8] Even if the ALJ concluded, after review of the entire body of evidence, that Yancey's thumb problem was not severe, he had a duty to explain how he resolved the obvious conflict in the medical evidence.

[9] The ALJ's failure to properly consider Yancey's right-hand problems and failure to accommodate her problems in the RFC were not harmless, because one of the two jobs identified by the VE required frequent (rather than occasional) fingering, and the other job had some requirements that potentially outstripped her abilities. DOT# 318.687-010 (Dishwasher) and 922.687-058 (Store Laborer); *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* ("SCO"); Soc. Sec. Ruling 00-4p.

consideration to limitations stemming from Yancey's right thumb amputation.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 3rd day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE